UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL J. PHILBIN, | : |
| Plaintiff, | : |
| v. | : C.A. No. 06-0242 (AK) |
| THE WACKENHUT CORPORATION, et al., | : |
| Defendants. | : |

MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,
THE BRICKMAN GROUP, LTD.

The Brickman Group, Ltd., by and through its attorneys, Armstrong, Donohue, Ceppos & Vaughan, Chartered, and pursuant to Cv.R 56 and LCvR 56.1, respectfully moves for summary judgment in its favor on the following grounds:

1.  There is no genuine dispute regarding any material fact upon which this Motion is based;

2.  This Defendant is entitled to judgment as a matter of law.

3.  Additional specific grounds and authorities in support of this Motion are set forth in the accompanying Legal Memorandum of Points and Authorities. In addition, pursuant to LcvR 56.1, a Statement of Undisputed Material Facts, with record references thereto, accompanies this Motion.

Respectfully submitted,

ARMSTRONG, DONOHUE, CEPPOS
    & VAUGHAN, CHARTERED


    /s/ H. Patrick Donohue
H. Patrick Donohue    #279687
204 Monroe Street, Suite 101
Rockville, Maryland 20850
(301) 251-0440
Attorney for Defendant,
The Brickman Group, Ltd.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, THE BRICKMAN GROUP, LTD., accompanying LEGAL MEMORANDUM, STATEMENT OF UNDISPUTED MATERIAL FACTS, and proposed ORDER was electronically filed on this 30th day of March, 2007 and sent via e-mail to:

Robert G. Samet, Esquire
One Central Plaza, Suite 1002
11300 Rockville Pike
Rockville, Maryland 20852
Attorney for Plaintiff

Jerry D. Spitz, Esquire
2000 L Street, N.W., Suite 400
Washington, D.C. 20036
Attorney for Plaintiff

Deborah M. Whelihan, Esquire
JORDAN, COYNE & SAVITS, LLP
1100 Connecticut Avenue, N.W.
Suite 600
Washington, D.C. 20036
Attorney for Defendants
The Wackenhut Corporation and
Wackenhut Services, Inc.

                                                                                    /s/ H. Patrick Donohue
                                                                      H. Patrick Donohue   #279687

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL J. PHILBIN,                          :
                                             :
    Plaintiff,                              :
                                             :
v.                                           :   C.A. No. 06-0242 (AK)
                                             :
THE WACKENHUT CORPORATION, et al.,           :
                                             :
    Defendants.                             :

LEGAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. GENERAL BACKGROUND

On the morning of February 26, 2003, Plaintiff Michael Philbin slipped and fell in the rear parking lot of the Navy's Nebraska Avenue Complex (NAC), his place of employment. He estimates the fall occurred at approximately 8:00 a.m. that morning, roughly two-thirds of the distance from his parked vehicle within the facility's rear lot and the rear (Echo) entrance gate. See Plaintiff's Deposition, at pp. 123-131, Exhibit 7; Plaintiff's diagram, Exhibit 4. It had been snowing while the Plaintiff drove into work, and there was still a light snowfall in progress at the time of the fall. Mr. Philbin attributed his fall to a patch of snow-covered ice which, while he estimated had a minimum dimension of approximately 6" x 12" Exhibit 7, at p. 119.

Mr. Philbin was aware of the weather conditions, low temperatures and the consequential possibility of slippery conditions in the parking lot, but encountered no ice or slippery condition prior to reaching the fall site. Exhibit 7, pp. 119, 120. Nor, after regaining his feet after the fall, did Mr. Philbin encounter any other slippery condition as he ambulated to the rear entrance gate. Exhibit 7, p. 121. Although Mr. Philbin did fall

a second time, in the close proximity of the entrance gate, he clearly attributed that incident not to any icy or snowy condition, but strictly because his leg "just collapsed" from the injury he had sustained in the parking lot. Exhibit 7, pp. 115. Further, the Plaintiff conceded at his deposition that the <u>only</u> location of ice in the parking lot of which he had personal knowledge on the morning of this fall was the 6" x 12" patch in the immediate location of his fall. Exhibit 7, p. 121.

Without a sound factual foundation, Mr. Philbin attributes his fall to frozen snow melt from snow piles that had previously been in the parking lot following the President's Birthday Holiday" blizzard some 10 days earlier. The Plaintiff, for example, did not recall that it had rained during the several days before his accident, and conceded that he could not recall that any snow piles were still left. To the extent the Plaintiff's negligence claim in this case is the failure to take appropriate precautions with respect to refreezing snow melt in the parking lot area, the Plaintiff's theory is based solely on hypothetical possibility and mere speculation. Exhibit 7, pp. 122 - 124.

## II.  SNOW/ICE REMOVAL PROCEDURES

The discovery in this case has clarified the procedure and chronology of contacts involved in initiating snow and ice removal procedures at the Navy's NAC:

    (a)    The procedures are initiated by the Navy, via a contact directly to Wackenhut.

    (b)    Wackenhut, which maintains a Facilities Management Office at the NAC site, then contacts Brickman.

    (c)    Brickman, which has no site presence unless requested by Wackenhut, has one hour to respond, and three hours in which to perform the requested service.

        (d)       Brickman's work is inspected by both the Navy and Wackenhut, and its work personnel are not authorized to leave until the inspection reveals satisfactory performance.

See Exhibit 1; Exhibit 8, at pp. 50, 51, 65, 68; Exhibit 9, p. 34.

There is no separate procedure strictly for ice removal, and Brickman was not not requested to respond to the NAC strictly for that purpose between the blizzard and Mr. Philbin's fall.  Exhibit 12.

       On the morning of Mr. Philbin's fall, the snow removal procedures were initiated via a phone authorizing contact by the Navy's Dave Sears to Wackenhut's Jerome Harman at 6:38 a.m. Exhibit 8, at pp. 5, 6, 97, 98; Mr. Harman's phone call detail, Exhibit 3.  Mr. Harman then immediately contacted Brickman's superintendent, Adam Graswick, who was en route, at 6:40 a.m.  Exhibit 8, at pp. 97 - 99, 102; Exhibit 10, at pp. 9, 10; Exhibit 3.  Mr. Graswick arrived at the NAC at approximately 7:00 a.m., assembled his snow shoveling crew, loaded the salt truck, and commenced snow and ice removal operations shortly after 7:00 a.m.  Exhibit 10, at pp. 10, 17, 59 - 61; Exhibit 11; see also Brickman Site Visit Report, 2/26/03, within Exhibit 12.

       A detailed description of Mr. Graswick's job performance, which consisted primarily of spreading 2½ tons of salt, including the route he took throughout the NAC facility to fulfill the "priority" requirements for snow and ice removal at the entrance gates and primary roadways, pursuant to the Navy's express requests, appear in Exhibit 10, at pp. 14 - 39; Exhibit 2; Exhibit 11.  See also Subcontract Agreement and Wackenhut Services Snow and Ice Removal Plan, Exhibits 1 and 2, respectively, for confirmation that Mr. Graswick's description of Brickman's work was completely consistent with its subcontracted obligations.

A light snow was falling throughout the early morning hours, including the time frame before, during and after Mr. Philbin's fall. While Mr. Graswick's salt-spreading responsibilities included the perimeter of the rear parking lot, including the aisleway directly in front of the Plaintiff's parked vehicle, it is unknown whether the salt truck had reached all aisles of the rear parking lot by 8:00 a.m. What is also unclear is whether, had salt been spread, on a priority basis, directly over the 6" x 12" patch on which Mr. Philbin's fall occurred, any effective melting would have occurred by 8:00 a.m. There is absolutely no evidence in this case that Defendant Brickman's representatives, or any other individual, had either actual or constructive notice of the localized ice patch where the Plaintiff fell. Brickman had received no prior complaints or notice information of this specific condition, nor did either the Navy or Wackenhut have any post-incident complaints or criticisms of the timeliness or adequacy of Brickman's operations on February 26, 2003

### III.  LEGAL ARGUMENT

In analyzing the claims against Defendant Brickman, it is important to distinguish between the duties owed by premises owners and occupiers, as opposed to third parties contracted to perform specific services. It is hornbook law that owners and occupiers of property owe non-delegable duties, under all relevant circumstances, to exercise ordinary care to keep the premises in a reasonably safe condition. While owners or occupiers of property may have an affirmative duty to warn business invitees of the existence of dangerous conditions that may arise from conditions not readily apparent to the senses, there is no obligation to discover defects which a reasonable inspection would

not reveal.  An owner or landlord who lacks actual or constructive notice of a hazardous condition is not liable for resulting injuries, as a landlord's responsibility consists in removing, within a reasonable amount of time, only those accumulations which he knew or should have known were dangerous.  See generally, Youssef v. 3636 Corp., 777 A.2d 787 (D.C. 2001).

Applying these principles to the case facts, it is difficult to articulate any reasonable basis for imposing liability on owners/occupiers of a large government facility who do not discover, remove and/or warn invitees of the presence of a 6" x 12" ice patch.  Because "weather predictions alone are not sufficient to establish constructive notice of an allegedly dangerous condition," Id. at 793, the fundamental issue regarding the owner's notice-based duty of care in this case is whether the Plaintiff has established more than a scintilla of evidence that a reasonable inspection of the rear parking lot would fairly have revealed the 6"x 12" ice patch in sufficient time to permit appropriate remedial measures.

A different analysis applies to a third party contractor lacking a site presence and/or any contractual duty to conduct regular or even periodic inspections.  No such inspection duty is imposed on Defendant Brickman under its subcontract with Wackenhut, Exhibit 1, at pp. 5, 6.  Rather, no services are contemplated to be performed whatsoever by Brickman until "within one hour of notification" of a snow event. Id. at 6. The industry standards expressly incorporated into the Subcontract's performance criteria call for clearance of road surfaces within 2 hours, with no accumulations over 3", and clearance of parking lots within 3 hours.  Id. at 6.  There is not a shred of evidence in this case that Brickman failed to meet these criteria.

In short, the Plaintiff's claim against Brickman in this case is that it should have provided snow and ice removal services either before it was actually contacted or authorized to commence work on February 26, 2003; or should have provided services at a much higher level then were contracted for; or somehow, perhaps with clairvoyance, should have focused on the aisleways within the rear parking lot, as opposed to addressing the Navy's requested snow removal priorities, as in Wackenhut's Snow and Ice Removal Plan, Exhibit 2, at pp. 3-5. Mr. Graswick's testimony reflects that he responsibly followed the assigned Plan while spreading 2½ tons of salt. Exhibit 10, at pp. 14 - 39; Exhibit 2; Exhibit 11.

The record of this case clearly establishes that the snow event to which Brickman was responding on the morning of February 26, 2003 was still in progress, i.e., light snow fall was occurring at the time of Mr. Philbin's fall. Brickman had no prior notice of the relatively small patch of ice at the fall scene, and thus no reason to focus on this particular spot on a large campus covering several dozen acres. Under applicable District of Columbia case law, property owners, as well as snow removal service providers, are entitled to a reasonable opportunity to perform their snow and ice clearance operations. See Battle v. George Washington University, 871 F.Supp. 1459 (D.C. 1994). Under the circumstances of this case, the evidence overwhelmingly indicates that that is exactly what Defendant Brickman was doing. There is no showing, within the record of this case, that Brickman was in any way negligent in the performance of its responsibilities.

Nor, as a matter of law, and consistent with the relevant contract provisions, did Brickman have any duty to conduct site inspections, or to warn invitees of possible icy conditions. Mr. Philbin's awareness of the morning's weather conditions, and the

prospect of encountering an icy patch, was in no respect inferior to the information available to Brickman's personnel. Accordingly, summary judgment should properly be granted in Brickman's favor in this action.

                                            ARMSTRONG, DONOHUE, CEPPOS
                                                & VAUGHAN, CHARTERED

                                               /s/ H. Patrick Donohue
                                      H. Patrick Donohue     #279687
                                      204 Monroe Street, Suite 101
                                      Rockville, Maryland 20850
                                      (301) 251-0440
                                      Attorney for Defendant,
                                      The Brickman Group, Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL J. PHILBIN,                    :
                                        :
    Plaintiff,                         :
                                        :
v.                                      :   C.A. No. 06-0242 (AK)
                                        :
THE WACKENHUT CORPORATION, et al.,     :
                                        :
    Defendants.                        :

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Brickman Group, Ltd., by and through its attorneys, Armstrong, Donohue, Ceppos & Vaughan, Chartered, and pursuant to LCvR 56.1, submits the following enumeration of undisputed facts:

1. Mr. Philbin fell in the rear parking lot of the Navy's Nebraska Avenue Complex on February 26, 2003. See Complaint; Exhibit 7, at p. 131; Exhibits 4 and 5.

2. There was a light snowfall that morning, with only a "dusting" accumulation. The snowfall continued intermittently throughout the morning. Exhibit 7, at 99, 114, 130, 131.

3. Mr. Philbin was aware it was cold enough to permit freezing conditions, and the potential of a slippery walking surface. Exhibit 7, at pp. 125, 126.

4. Mr. Philbin encountered no ice while walking through the NAC's rear parking lot toward the employee entrance gate until he reached the spot of his fall. He estimated the minimum dimension of the icy patch he encountered to be 6" x 12". Exhibit 7, at pp. 118 - 120.

5. This was the only ice patch in the parking lot Mr. Philbin was aware of. Exhibit 7, at p. 121.

6. Mr. Philbin does not recall that it had rained during the 2 - 3 days before his fall, did not recall any residual snow piles in the parking lot, and does not know what the source of the water was that had frozen at his fall site. Exhibit 7, at pp. 122 - 125.

7. Mr. Philbin fell a second time, near the rear entrance gate, but that fall occurred because his left leg "gave way," or "collapsed" on him, as opposed to any ice or slippery pavement condition. Exhibit 7, at pp. 64, 115.

8. Defendant Brickman has no site presence, and occupies no portion of the Navy's NAC, a sprawling complex near the intersection of Nebraska and Massachusetts Avenues, N.W. Exhibit 10, at pp. 6, 7, 13.

9. Defendant Brickman's snow and ice removal responsibilities were performed pursuant to a Subcontract with Wackenhut Services. Exhibit 1.

10. All snow removal procedures at the NAC required the advance authorization of and were initiated by the Navy (specifically, Dave Sears), and the instruction to commence operations was always communicated to Brickman by Wackenhut. Exhibit 8, at pp. 50, 51, 65, 68; Exhibit 9, p. 34.

11. The last date prior to February 26, 2003 Brickman had been requested to perform any salting or sanding operations at the NAC was February 19, 2003. Exhibit 9, at p. 19; Exhibit 10, at pp. 44, 45; Exhibit 12.

12. On February 23, Brickman arranged for an independent contractor to remove residual snow piles from the NAC's parking lots at the Navy's request. Exhibit 9, at pp. 16, 17; Exhibit 10, at pp. 45 - 50.

13. On February 26, 2003, the Navy authorized initiation of snow removal procedures at the NAC by phone call to Wackenhut's Facities Manager, Jeremy Harman, at 6:38 a.m. Exhibit 8, at pp. 5, 6, 97, 98.

14. Mr. Harman communicated the authorization to Brickman's Superintendant for NAC snow removal operations, Adam Graswick, at 6:40 a.m. Exhibit 8, at pp. 97 - 99, 102; Exhibit 10, at pp. 9, 10.

15. Brickman's snow event response at the NAC on February 26, 2003, which included a shoveling crew and spreading 2½ tons of salt using a spreader attchment on a Ford Super Duty truck, commenced shortly after 7:00 a.m. commenced at approximately 7:00 a.m. Exhibit 10, at pp. 10, 17, 59 - 61; Exhibit 11; Exhibit 12.

16. Mr. Graswick performed salt spreading operations consistently with the Navy's requested priorities, as outlined in Wackenhut's Snow and Ice Removal Plan. Exhibit 10, at pp. 14 - 39; Exhibit 2; Exhibit 11; Exhibit 12.

17. All Brickman's work was inspected by the Navy and Wackenhut, and Brickman personnel were not authorized to depart the NAC unless the work was deemed to have been satisfactorily performed. Exhibit 1; Exhibit

8, at p. 46; Exhibit 10, at p. 66, 67.

                               Respectfully submitted,

                               ARMSTRONG, DONOHUE, CEPPOS
                                        & VAUGHAN, CHARTERED


                               /s/ H. Patrick Donohue
                             H. Patrick Donohue   #279687
                             204 Monroe Street, Suite 101
                             Rockville, Maryland 20850
                             (301) 251-0440
                             Attorney for Defendant,
                             The Brickman Group, Ltd.