Westlaw.

224 A.2d 433 Page 1

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

▷
Honolulu Limited v. Cain,
Md. 1966.

Court of Appeals of Maryland.
HONOLULU LIMITED
v.
Margaret CAIN et vir.
No. 245.

Dec. 8, 1966.

Action by business invitee against shopping center corporation for injuries received in fall on icy patch in shopping center parking lot. The Circuit Court, Baltimore County, Walter M. Jenifer, J., found that evidence was sufficient to go to jury, and plaintiffs appealed. The Court of Appeals, Barnes, J., held that evidence that shopping center permitted its snow removal service to pile snow at end of parking lot diagonally opposite from only drains and did not have wet area in lot sanded or salted before onset of winter night presented question for jury whether it was negligent.

Affirmed.

Marbury, Horney and McWilliams, JJ., dissented.
West Headnotes
**[1] Negligence 272 ☞1076**

272 Negligence
    272XVII Premises Liability
        272XVII(C) Standard of Care
            272k1075 Care Required of Store and Business Proprietors
                272k1076 k. In General. Most Cited Cases
    (Formerly 272k32(1))
Occupant of business premises does not become an insurer of safety of those who accept his invitation to come upon premises.

**[2] Negligence 272 ☞1037(5)**

272 Negligence
    272XVII Premises Liability
        272XVII(C) Standard of Care
            272k1034 Status of Entrant
                272k1037 Invitees
                    272k1037(5) k. Public Invitees in General. Most Cited Cases
    (Formerly 272k32(1))
When public is led to believe that premises have been offered for its entry, occupant assumes a duty of reasonable care to see that place is safe for the purpose, and duty extends to those who are injured when they enter in response to the invitation.

**[3] Negligence 272 ☞1088**

272 Negligence
    272XVII Premises Liability
        272XVII(D) Breach of Duty
            272k1087 Knowledge or Notice in General
                272k1088 k. In General. Most Cited Cases
    (Formerly 272k48)

**Negligence 272 ☞1037(4)**

272 Negligence
    272XVII Premises Liability
        272XVII(C) Standard of Care
            272k1034 Status of Entrant
                272k1037 Invitees
                    272k1037(4) k. Care Required in General. Most Cited Cases
    (Formerly 272k50)

**Negligence 272 ☞1085**

272 Negligence
    272XVII Premises Liability
        272XVII(D) Breach of Duty
            272k1085 k. In General. Most Cited Cases
    (Formerly 272k52)
Landowner is subject to liability for harm caused by natural or artificial condition on his land if he

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433                                                                 Page 2
244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

knows or by exercise of reasonable care could discover the condition, if he should expect that invitees will not discover the danger or will fail to protect themselves against it, or if he invites entry upon land without making the condition safe or giving a warning.

**[4] Negligence 272** €→1204(1)

272 Negligence
    272XVII Premises Liability
        272XVII(G) Liabilities Relating to Construction, Demolition and Repair
           272k1204 Accidents and Injuries in General
                272k1204(1) k. In General. Most Cited Cases
    (Formerly 272k32(1))
In certain circumstances, the design or construction of premises themselves may present an unreasonable danger to a business invitee so as to make landowner liable for invitee's injuries.

**[5] Negligence 272** €→1707

272 Negligence
    272XVIII Actions
        272XVIII(D) Questions for Jury and Directed Verdicts
           272k1705 Premises Liability
                272k1707 k. Slips and Falls in General. Most Cited Cases
    (Formerly 272k136(24))
Evidence that shopping center permitted its snow removal service to pile snow at end of parking lot diagonally opposite from only drains and that it did not have wet area sanded or salted before onset of winter night presented question for jury whether shopping center was negligent to patron who slipped and fell on ice in parking lot.

**[6] Negligence 272** €→1669

272 Negligence
    272XVIII Actions
        272XVIII(C) Evidence
           272XVIII(C)5 Weight and Sufficiency
              272k1667 Premises Liability
                272k1669 k. Slips and Falls in General. Most Cited Cases
    (Formerly 272k134(3))
Testimony by two store proprietors that they had never received any complaints about icy conditions in shopping center and were unaware of any falls on ice did not establish in action by patron who was injured in fall on ice in parking lot that presence of ice did not constitute an unreasonable risk of harm to business invitees.

**[7] Negligence 272** €→1135

272 Negligence
    272XVII Premises Liability
        272XVII(D) Breach of Duty
           272k1131 Snow and Ice
              272k1135 k. Removal Efforts and Failure to Remove. Most Cited Cases
    (Formerly 272k50)
That shopping center removed snow from its parking lot in method and manner generally used in the area did not discharge its duty of reasonable care to its invitees in view of evidence that it permitted snow removal service to pile snow at end of parking lot diagonally opposite from the only drains and did not have wet area in parking lot sanded or salted before onset of winter evening.

**[8] Negligence 272** €→1662

272 Negligence
    272XVIII Actions
        272XVIII(C) Evidence
           272XVIII(C)5 Weight and Sufficiency
              272k1662 k. Trades, Special Skills and Professions. Most Cited Cases
    (Formerly 272k134(1))
Conformance to an industry standard is often weighty evidence that action in question is reasonable and not negligent, but, however, is not conclusive.

**[9] Negligence 272** €→1076

272 Negligence
    272XVII Premises Liability
        272XVII(C) Standard of Care
           272k1075 Care Required of Store and Business Proprietors

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433    Page 3
244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

272k1076 k. In General. Most Cited Cases
(Formerly 272k30)
When circumstances make customary method inherently dangerous or obviously improper, the duty of reasonable care to business invitee requires a change from ordinary practice.

**[10] Negligence 272 €═1132**

272 Negligence
    272XVII Premises Liability
        272XVII(D) Breach of Duty
            272k1131 Snow and Ice
                272k1132 k. In General. Most Cited Cases
(Formerly 272k121.1(10), 272k121(1))
Dangerous condition created by ice in shopping center parking lot existed for sufficient length of time to permit inference that reasonable care on part of shopping center would have led to its discovery, where shopping center knew that water from melting snow would flow across the lot and that on February evenings it was apt to freeze, notwithstanding that ice upon which invitee who sought recovery slipped was formed only fifteen or twenty minutes before the accident.

**[11] Negligence 272 €═1086**

272 Negligence
    272XVII Premises Liability
        272XVII(D) Breach of Duty
            272k1086 k. Defect or Dangerous Conditions Generally. Most Cited Cases
(Formerly 272k28)
Occupier of business premises can be held liable only for maintaining a condition which is unreasonably dangerous.

**[12] Negligence 272 €═1089**

272 Negligence
    272XVII Premises Liability
        272XVII(D) Breach of Duty
            272k1087 Knowledge or Notice in General
                272k1089 k. Constructive Notice. Most Cited Cases
(Formerly 272k48)

Where a dangerous condition is obvious, occupier of business premises may be charged with knowledge of it, and knowledge of condition may remove element of unreasonableness from danger so as to make owner liable to invitees.

**[13] Negligence 272 €═1291(4)**

272 Negligence
    272XVII Premises Liability
        272XVII(L) Defenses and Mitigating Circumstances
            272k1281 Plaintiff's Conduct or Fault
                272k1291 Exterior Grounds
                      272k1291(4) k. Snow and Ice. Most Cited Cases
(Formerly 272k66(1))
Icy condition of shopping center parking lot was not an obvious danger equally apparent to invitee as to invitor and did not render invitor immune from liability for injuries received by invitee in fall on ice where, although invitee had splashed her stockings while proceeding from parked automobile to shopping area and parking area was generally well-illuminated, she did not recall precisely where wet area was and walked back to automobile by a different route and encountered no ice whatsoever until she fell.

**[14] Negligence 272 €═1291(3)**

272 Negligence
    272XVII Premises Liability
        272XVII(L) Defenses and Mitigating Circumstances
            272k1281 Plaintiff's Conduct or Fault
                272k1291 Exterior Grounds
                      272k1291(3) k. Parking Lots and Driveways. Most Cited Cases
(Formerly 272k65)
Where shopping center patron returned from store to her automobile in parking lot by zigzagging between other parked automobiles, route was a reasonable one for her to have followed in absence of walkways or other safe routes provided for her, even though that route was less brightly lit than the wider traffic lanes on the lot so that patron was not contributorily negligent.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433 Page 4
244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

**[15] Negligence 272 €⇒1291(3)**

272 Negligence
    272XVII Premises Liability
        272XVII(L) Defenses and Mitigating Circumstances
            272k1281 Plaintiff's Conduct or Fault
                272k1291 Exterior Grounds
                    272k1291(3) k. Parking Lots and Driveways. Most Cited Cases
     (Formerly 272k65)
There is no rule or law charging shopping center patron with contributory negligence for failing to walk in traffic lanes while in parking area.

**[16] Negligence 272 €⇒1314**

272 Negligence
    272XVII Premises Liability
        272XVII(L) Defenses and Mitigating Circumstances
            272k1310 Assumption of Risk
                272k1314 k. Particular Cases. Most Cited Cases
     (Formerly 272k105)
Shopping center patron who was not chargeable with knowledge of risk created by icy condition of shopping center parking lot could not be charged with assuming risk of her own injury which occurred when she fell on icy patch in parking lot.

**[17] Negligence 272 €⇒554(2)**

272 Negligence
    272XVI Defenses and Mitigating Circumstances
        272k550 Assumption of Risk
            272k554 Elements
                272k554(2) k. Knowledge of Danger. Most Cited Cases
     (Formerly 272k105)
An essential element of doctrine of assumption of risk is that plaintiff must understand risk or harm to which he is exposed.

*594 **434 Phillips L. Goldsborough, III, Baltimore (Robert E. Cadigan and Smith, Somerville & Case, Baltimore, on the brief), for appellant.

Richard A. Reid, Towson (John E. Ensor and Royston, Mueller, Thomas & McLean, Towson, on the brief), for appellees.

Argued Oct. 11, 1966, before HAMMOND, C. J., and MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.
Reargued Nov. 7, 1966, beofre HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.
BARNES, Judge.
On February 27, 1964, 66 year old Margaret Cain, one of the appellees and one of the plaintiffs below, was driven by her daughter-in-law Clara to the Hillendale Shopping Center in Baltimore County. The shopping center is owned by the defendant-appellant Honolulu Limited. The women arrived at Hillendale between 6:30 and 6:50 p. m. and shopped until 7:30 p. m. Returning to their automobile, the elderly Mrs. Cain slipped on a thin glaze of ice which had formed on the black macadam surface of the parking lot. This fall and the injuries arising from it are the subject of this case.

We agree with Judge Jenifer of the Circuit Court for Baltimore County that there was sufficient evidence to go to the jury on the issue of the defendant's primary negligence, and that the plaintiff was neither guilty of contributory negligence nor had assumed the risk of her own injury as matters of law.

The evidence showed that the shopping center, constructed in 1954 at Loch Raven Boulevard and Taylor Avenue, consisted of several stores arranged in an 'L' around the parking lot. One-half an inch of snow had fallen in the area on February 10, 1964, approximately nine inches of snow had fallen on February 11; and seven inches more had fallen on February 18, and 19, eight days before the accident. It appeared that there was no measurable snow on the ground by February 27, except for mounds of plowed and shoveled snow along the sides of streets *595 and elsewhere throughout the county. There were also mounds of snow piled along grass embankments bordering the defendant's parking lot at its northwest end, which is farthest away from the stores. These mounds of snow had been pushed from the surface of the defendant's parking lot by a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433                                                                                                    Page 5

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

snow removal company engaged by the defendant. Expert testimony established that the snow removal methods used at Hillendale at the time of the accident are the same as those presently used, are no different from those employed at other shopping centers in the area and conform to standard practice in the locale.

There was also evidence to show, however, that although the snow was piled on the embankments in the northwest corner of the parking area, the only drains to catch water, which would necessarily result when the snow melted, were located at the 'L' formed by the stores in the southeast corner of the premises. The parking lot was gently graded so that water would run from the melting snow on the northwest corner of the parking area, across the lot, to these drains.

There was evidence that Mrs. Cain had slipped on ice formed from water which had flowed from the slowly melting piles of snow, diagonally across the parking area, toward the drains at the southeast end of the lot. The evidence indicates that the ice had formed only 15 or 20 minutes before the time of the accident.

(1) Primary negligence

[1][2] The duty of an occupant of land toward his business 'invitee' rested, in its inception, upon an implied representation of safety, 'a holding out of the premises as suitable for the purpose for which the visitor came * * *', Prosser, Business Visitors and Invitees, Selected Topics of the Law of Torts 243, 261 (1953). The word 'invitee' itself, conveys the idea that the place is held out to the visitor as prepared for his reception. The occupant does not, of course, become an insurer of the safety of those who accept his invitation. But when the public is led to believe that premises have been offered for its entry, the law is clear that the occupant assumes a duty of reasonable care to see that the place is safe for the purpose. The duty extends to those who are injured when they enter in response to the invitation.

*596 It is plain to us that there was sufficient evidence to permit a jury to find **436 that the defendant had breached its duty of reasonable care in the instant case. Indeed, there are at least two separate grounds upon which to base this finding.

[3] The Restatement of the Law of Torts, Second, sec. 343, sets forth the standards governing the relationship of landowner and business invitee with respect to a hazardous condition. The landowner is subject to liability for harm caused by a natural or artificial condition on his land if (a) he knows or by the exercise of reasonable care could discover the condition, (b) he should expect that invitees will not discover the danger, or will fail to protect themselves against it, (c) he invites entry upon the land without (1) making the condition safe, or (2) giving a warning. These principles have been approved many times by this Court. Yaniger v. Calvert Bldg. & Const. Co., 183 Md. 285, 289, 37 A.2d 263, 265 (1944); Evans v. Hot Shoppes, Inc., 223 Md. 235, 239, 164 A.2d 273, 276 (1960); Morrison v. Suburban Trust Co., 213 Md. 64, 130 A.2d 915 (1957); Glaze v. Benson, 205 Md. 26, 106 A.2d 124 (1954).

[4] Although in certain circumstances, the design or construction of the premises themselves may present an unreasonable danger to a business invitee, Rose v. Melody Lane of Wilshire, 39 Cal.2d 481, 247 P.2d 335 (1952); Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 P.2d 132 (1946); DeWeese v. J. C. Penney Co., 5 Utah 2d 116, 297 P.2d 898, 65 A.L.R.2d 399 (1956), we do not find it necessary to pass upon the issue of whether the defendant could be held negligent in allowing the flow of water from one end of the lot to the other.

[5] We hold, however, that knowing of this drainage pattern, and knowing that on cold February evenings water is likely to freeze, the defendant properly could be held to have acted unreasonably and negligently in permitting its snow removal service to pile snow at the end of the parking lot diagonally opposite from the drains. At least, it could have been found to have been negligent to do so without providing sufficient drains to catch the water at a point reasonably near to its source. As a result of the defendant's action, invitees-including

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433

Page 6

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

Mrs. Cain-were subjected to an unreasonable risk, i. e., a black macadam road surface that might be generally dry, but which would necessarily*597 contain patches or ribbons of ice whenever the water from melting snow became frozen.

Secondly, having knowledge of the dangerous condition it had created, the defendant could have been held to have been also negligent in not sanding or salting the wet area formed by the melting snow. The defendant's maintenance man, Richard Claybrook, had been employed at Hillendale since it opened in 1954. He had been instructed to salt the sidewalk in front of the stores, as well as any patch of ice he discovered on the parking area, and to correct any unusual conditions he discovered on the lot. Claybrook did not salt the wet area on the day of the accident, however, and the defendant made no effort at all to prevent ice from forming when the temperature dropped that evening. On the day of the accident, the defendant sent Claybrook home at five o'clock, despite the fact that the defendant knew that water regularly flowed from the piled snow at the northwest corner of the parking lot to the drains at the southeast corner, and knew, or should have known, that on a winter night, the ribbons of water were likely to turn to ice.

[6] Two store proprietors, who had been tenants at Hillendale since 1954, testified that they had never received any complaints about icy conditions from their customers and were unaware of any other similar accident at the shopping center. The Hillendale manager, William Weinberg, and his son Steven, the assistant manager, testified to the same effect, but both had been at Hillendale for less than two months prior to the accident. The **437 defendant suggests that this testimony 'establishes conclusively the presence of ice did not constitute an unreasonable risk of harm to business invitees.' We do not agree with this contention. We have held in Locke, Inc. v. Sonnenleiter, 208 Md. 443, 118 A.2d 509 (1955), that evidence of prior accidents is admissible to show both knowledge of the danger or of a defect on the part of the defendant and the dangerous nature of the place or appliance involved in the accident. But in Sonnenleiter, such evidence was not conclusive of the defendant's negligence; it was considered by the jury along with other evidence in determining whether the defendant had breached its duty of care to a business invitee. No greater weight can be accorded to evidence of silence on the part of other invitees*598 to show the absence of prior accidents or injuries on defendant's parking lot.[FN1] See e. g., Thompson v. District of Columbia (D.C.Mun.Ct. of Appeals) 182 A.2d 360(1962).

> FN1. Plaintiff made no objection to the admissibility of the testimony on the ground that the silence of other invitees was hearsay. For a comprehensive discussion of this problem see Falknor, Silence as Hearsay, 89 U.Pa.L.Rev. 192 (1940); Murchison, Silence as Hearsay, 24 N.C.L.Rev. 274 (1946); McCormick, Handbook of the Law of Evidence, s 229.

[7][8][9] We cannot agree with the defendant that it had necessarily discharged its duty of reasonable care by removing the snow in the method and manner generally used in the area. Conformance to an industry standard is, of course, often weighty evidence that the action in question is reasonable and non-negligent. It is not, however, conclusive evidence. Smith v. Bernfeld, 226 Md. 400, 174 A.2d 53 (1961). When circumstances make the customary method 'inherently dangerous or obviously improper' the duty of reasonable care requires a change from ordinary practice. Cf. Long v. Joestlein, 193 Md. 211, 216, 66 A.2d 407, 409 (1949). By conforming to the usual method of snow removal, in this case, the jury could have found that the defendant aggravated a dangerous condition rather than alleviating one.

[10] Nor do we accept the defendant's contention that the dangerous condition did not exist for a sufficient length of time to permit the inference that reasonable care would have led to its discovery. Although the ice on which Mrs. Cain slipped formed only 15 or 20 minutes before the accident, the defendant had knowledge that water would flow from melting snow across the lot. It knew also that it was likely on February evenings the water was apt to freeze. In these circumstances, it is immaterial that the ice formed only a short time before the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433

Page 7

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

plaintiff fell on it. The jury could have found that reasonable care demanded that the wet area be salted, as a precaution, before the ice had formed. This case clearly falls within the exception noted in Rawls v. Hochschild, Kohn & Co., 207 Md. 113, 113 A.2d 405, 62 A.L.R.2d 124 (1955) and Lexington Market Authority v. Zappala, 233 Md. 444, 197 A.2d 147 (1964). The jury could have found that the factors creating the dangerous condition *599 existed long enough to give the defendant reasonable notice, actual or constructive, of its existence.

[11][12] Finally, we cannot agree with the defendant's argument that it was free from primary negligence because the condition was an 'obvious danger * * * equally apparent to the invitee as (it was) to the invitor.' It is true, of course, that the defendant can be held liable only for maintaining a condition which is unreasonably danagerous. The ordinary person can encounter many dangers safely if he is fully aware of their presence at the time. Where a dangerous condition is obvious, the plaintiff may be charged with knowledge of it, and the knowledge of the condition may remove the element of unreasonableness from a danger. We have held, for example, that the handle of an automobile jack, protruding from the front of **438 an automobile in a garage, is an obvious danger to one who was thoroughly familiar with the nature of the premises and the conduct of a garage business, Morrison v. Suburban Trust Co., supra; and that display cases and racks, which a seller uses to show his merchandise, are an obvious danger when in full view, Evans v. Hot Shoppes, Inc., supra.

[13] The only evidence that Mrs. Cain had knowledge of the dangerous condition is that she ' splashed her stocking' while proceeding from the parked car to the shopping area, and that the parking area generally was well-illuminated. On the other hand, there was evidence that Mrs. Cain did not recall precisely where this wet area was, and that she walked back to the car by a different route from the one she had first taken. On returning, she encountered no ice whatsoever until she fell. On these facts, we cannot say that she was charged with knowledge that patches of ice had formed, or were likely to form, on a particular part of the lot surface.

(2) Contributory negligence

[14][15] We see no basis for the defendant's suggestion that Mrs. Cain was contributorily negligent as a matter of law. She had no reason to know of the danger to which she was exposed. Moreover, the jury could find that her exposure to the danger was unintentional and completely reasonable under the circumstances. Mrs. Cain, following her daughter-in-law, returned to the car by zigzagging between other parked vehicles. This route *600 was no doubt less brightly lit than the wider traffic lanes on the lot, but the route was a reasonable one for the plaintiff to have followed. No walkways or safe routes were provided for her. Cf. Tyler v. Martin's Dairy, Inc., 227 Md. 189, 175 A.2d 587 (1961). There is no rule of law charging the plaintiff with contributory negligence for failing to walk in the traffic lanes.

(3) Assumption of risk

[16][17] Having held that the plaintiff could not be charged with knowledge of the risk as a matter of law, we must necessarily hold that Mrs. Cain did not assume the risk of her own injury. An essential element of this doctrine is that the plaintiff must understand the risk of harm to which he is exposed. Burke v. Williams, Md., 223 A.2d 187 (1966); Velte v. Nichols, 211 Md. 353, 127 A.2d 544 (1956).

Judgment affirmed, the appellant to pay the costs.

MARBURY, Judge (dissenting).
I cannot agree with the majority that there was sufficient evidence to go to the jury on the issue of the defendant's primary negligence. I am of the opinion that the plaintiffs failed to produce evidence legally sufficient to prove the breach of the duty of exercising ordinary care in the maintenance of its parking lot owed by the defendant to the plaintiffs, which resulted in Margaret Cain's injuries.

On February 27, 1964, the plaintiffs were driven to the shopping center, which they had visited on numerous occasions in all types of weather, by their

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 9 of 13

224 A.2d 433                                                                                                          Page 8
244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

daughter-in-law, Clara Cain. They arrived at the shopping center some time between 6:30 and 6:50 p. m. while it was dusk and parked in the northwestern part of the lot. From there the three walked in a driving lane to one of the stores on the eastern side of the lot in order to make a purchase of shoes.

All three were aware of the existence of areas of dampness on the surface of the lot after their arrival. While she was parking her automobile, the daughter-in-law first observed the dampness which she said was located 'where the cars run and water *601 comes from the corner of the Sinclair Station,' which was in the northwestern corner of the lot. She also observed dampness in the eastern driveway immediately in front of the store to which they were proceeding and saw snow piled along **439 the curb there. The plaintiff, Norton R. Cain, upon alighting from the automobile, observed an area of dampness which extended over the area where his wife later fell, about fifteen or twenty feet from the parked car. Margaret Cain 'splashed her stocking' while walking from the parked car toward the store.

After the purchase of shoes was made the plaintiffs waited in front of the store while Clara Cain returned to the parked automobile and placed the shoes in it. She again observed dampness in front of the store where the shoes were purchased, but at that time she did not notice the dampness in the vicinity of the parked car. The damp areas observed by Clara Cain and by the plaintiffs were not frozen, either upon their arrival at the shopping center or upon Clara Cain's return to the car to place the shoes in it.

Clara returned by the same route, and the three then walked along the sidewalk in front of the stores located on the southerly side of the parking lot to a store where Margaret Cain purchased a dress. When they left the store, they zigzagged their way through parked cars toward their automobile, Margaret Cain following her daughter-in-law. It was dark by then, but the lights on the lot were turned on and the lot was well illuminated. While walking toward the car, the plaintiffs had no difficulty seeing, but the shadows in the areas between the parked cars somewhat reduced the visibility. At about 7:15 p. m., Margaret Cain, who was carrying only her purse, slipped and fell just as she emerged from parked cars and began to walk across the driving lane toward the car of her daughter-in-law. This was the same lane in which she had splashed her stocking earlier. After she fell she discovered that she had slipped on a thin glaze of ice which she had not noticed before. Clara Cain testified that the ice upon which her mother-in-law fell was part of a sheet of ice which extended in a ribbon from a pile of snow at the northwest corner of the lot. On February 27, 1964, the temperature dropped from thirty-three degrees at 5:00 p. m. to thirty-one degrees at 6:00, 7:00, and 8:00 p. m. According *602 to the testimony the glaze on which Margaret Cain slipped formed some time after Clara Cain returned to the parked car with the shoes, which was approximately fifteen to twenty minutes before the accident.

The weather conditions on the day of the accident were clear and, as described by the plaintiffs, ' moderate for that time of February.' There had been a light snow on February 10 and heavy snows on February 11 (8.6 inches) and on February 17-18 (7 inches). The snow on the parking lot in question had been pushed from the parking area in front of the stores and piled along the grass embankments at the northwest corner of the parking lot, at the south and east sides of the service station. The method used in removing the snow from this parking lot was common to that used in snow removal from other such lots in the area. The snow was not hauled away, nor was the entire lot salted or sanded, for to do either would have been prohibitively expensive. By February 27 there was no trace of snow on the ground, except for mounds of plowed and shoveled snow along the sides of streets and elsewhere throughout the county. Both plaintiffs were aware of this, as there were piles of snow alongside of their own driveway. There was a period of thawing and freezing, but no temperatures below freezing were recorded for the two days prior to the accident during the hours the lot was open for business.

The parking lot was under the control and supervision of the defendant. It was constructed of blacktop and was gently graded so that any water

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433                                                                                                    Page 9

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

which fell or formed on the lot would drain toward drains located in the southeasterly part of the lot where the stores formed an angle as in an 'L.' Defendant employed a maintenance man whose duty was to salt the driveway entrances and sidewalks in front of the stores, as well as any patches of ice he might discover on the surface of the **\*\*440** lot. He ordinarily remained at work until aout 5:00 p. m., and did so on the day of the accident. No one was employed to patrol the lot during the evening. Prior to the accident, the evidence showed there had been no complaints or claims made for injuries as the result of icy conditions on the surface of the parking lot.

The duty of an owner or operator of a parking lot is to maintain\*603 the premises in a reasonably safe condition in view of its contemplated use and the purpose for which the invitation has been extended, or at least, to warn invitees against any dangers attendant upon the parking lot's use, which are not known to them nor obvious to any ordinarily intelligent person, and which either were known or in the exercise of reasonable care ought to have been known to the operator or owner. Lexington Market Authority v. Zappala, 233 Md. 444, 197 A.2d 147. Restatement (Second), Torts, Section 343. See cases cited in 14 A.L.R.2d 780, Liability of owner or operator of parking lot or station for personal injuries. However, the owner or operator of the parking lot is not an insurer of personal safety. Lexington Market Authority v. Zappala, supra. Cf. Moulden v. Greenbelt Consumers Services, Inc., 239 Md. 229, 210 A.2d 724; Hawkins v. So. Md. Agricultural Fair Assn., 237 Md. 90, 205 A.2d 286.

The important question in this case is whether the defendant could have been found to have acted unreasonably in permitting the snow removal company hired by it to pile snow, pushed from the parking areas, on the grass embankments surrounding the parking area where the water from the melting snow would flow across the lot to the drain, and in not sanding or salting the damp areas created by the melting snow.

The majority found it unnecessary to decide whether the 'defendant could be held negligent in allowing the flow of water from one end of the lot to the other,' yet it held that 'it could have been found to have been negligent \* \* \* (in piling snow in the northwestern part of the lot in light of the drainage pattern and the weather) without providing sufficient drains to catch the water at a point reasonably near to its source' and that 'the jury could have found that reasonable care demanded that the wet area be salted, as a precaution, before the ice had formed.'

A reasonable interpretation of this holding would require, in order to avoid liability, the construction of an intricate network of drains throughout a parking lot to catch surface water from melting snow. This requirement would impose an unreasonable burden on the parking lot owner as its duty is only to maintain the premises in a reasonably safe condition, not in an absolutely safe condition. See \*604Safeway Stores v. Bolton, 229 Md. 321, 182 A.2d 828; Finkelstein v. Vulcan Rail & Construction Co., 224 Md. 439, 168 A.2d 393; Yaniger v. Calvert Bldg. & Con. Co., 183 Md. 285, 37 A.2d 263.

The nature of the land the purpose for which it is used must be taken into consideration in determining the degree of care that is owed to the invitee. Restatement (Second), Torts, Section 343, comment e. A distinction must be drawn between the conditions existing inside a place of business and outside. The duty as to the maintenance of floor conditions is higher inside the inviter's place of business for the reason that invitees are examining merchandise and that the inviter invites a condition in which their attention is diverted to the inspection of merchandise. Crawford v. Soennichsen, 175 Neb. 87, 120 N.W.2d 578 (1963). See Evans v. Hot Shoppes, Inc., 223 Md. 235, 164 A.2d 273; Ludloff v. Hanson, 220 Md. 218, 151 A.2d 753; Dickey v. Hochschild, Kohn & Co., 157 Md. 448, 146 A. 282. Shopping center parking lots are generally unprotected from the weather and are constructed for the purpose of providing patrons of the stores with convenient places to park their automobiles. It is often that one sees piles of snow, which has been removed from the \*\*441 surface of open air parking lots, located so as to keep the optimum amount of parking spaces open and easily

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433

Page 10

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

accessible to the stores. This condition is one which is relatively normal after a snowfall. There was evidence to show that there was no store or shopping center parking lot in the area where snow was removed or could be removed in such a manner that water which melted therefrom did not flow across all or part of the surface of the parking area. The evidence also showed that piles of shoveled snow existed throughout the county on the day of the accident. The injuries Margaret Cain suffered were not the result of any abnormal, unusual, or extraordinary condition of the defendant's parking lot. See Evans v. Hot Shoppes, Inc., supra; Morrison v. Suburban Trust Co., 213 Md. 64, 130 A.2d 915. See also Chalmers v. Great Atlantic & Pacific Tea Company, 172 Md. 552, 192 A. 419.

In removing the snow from the surface of the lot, defendant certainly did not aggravate a dangerous condition. If the snow had not been removed, it would probably have formed ruts and ridges of ice which would not only have driven away customers, *605 but if any one of the invitees had slipped and had been injured, no doubt defendant would be found guilty of negligence in maintaining its parking lot. Cf. Beaney v. Carlson, 174 Ohio St. 409, 189 N.E.2d 880, 882 (1963). Langley Park Apts. v. Lund, Adm'r, 234 Md. 402, 199 A.2d 620. The only reasonable and practical place the snow could have been piled so that it did not interfere with or create a hazard to automobile or pedestrian traffic was on the grass embankments or on a place farthest from the area of the lot in general use by the invitees. Trucking the snow or salting or sanding the entire lot was shown to be prohibitively expensive.

The method of snow removal used in this parking lot was common to that used on similar lots in the area. The majority opinion was correct in stating that proof that a businessman follows the standards in his trade is not conclusive of due care, but it cut short the rule which continues on to state that such proof is very strong evidence of due care. Smith v. Bernfeld, 226 Md. 400, 407-408, 174 A.2d 53. '* * * (t)he owner discharges his obligation to exercise due care toward those to whom he owes a duty to keep the premises in a reasonably safe condition if he conforms to established custom in the particular instance, provided that such customary method of construction and maintenance is not inherently dangerous or obviously improper.' Long v. Joestlein, 193 Md. 211, 216, 217, 66 A.2d 407, 409. Although there were occasional areas of dampness, some of which were created by melting snow and some of which were created by water dripping from automobiles, the evidence demonstrated that the well-illuminated parking lot was not defective nor maintained in a dangerous condition.

The majority makes much of the fact that the maintenance man employed by the defendant did not sand or salt the damp areas before the ice had formed. The evidence showed that on the two days prior to the accident the temperature did not drop below freezing during the hours the lot was open for business. The ice on which Margaret Cain slipped was formed fifteen or twenty minutes before the accident. Certainly the defendant cannot be deemed guilty of negligence because of any failure to discover and eliminate the patch of ice within such a short period of time. Compare *606 Fitz Simons v. National Tea Company, 29 Ill.App.2d 306, 173 N.E.2d 534 (1961), where the ice from melting snow was nearly two inches thick and had been accumulating on the parking surface for about two or three weeks. It may well be that a parking lot operator should anticipate that water on the surface of the parking lot from melting snow or dripping automobiles may occasionally freeze, but he is not an insurer, and it would be unreasonable to hold that it is his duty to continuously inspect and sand any and all ice as soon **442 as it occurs, even if it is assumed that periodic inspections are necessary. Cf. Lexington Market Authority v. Zappala, supra. Defendant did not create an artificial condition on the surface of the parking lot. The dampness on the surface of the lot was the result of a rise in temperature causing the snow to melt and of water dripping from automobiles. The icy conditions formed as the result of a sudden drop in the temperature. The presence of ice that has formed as a result of drainage from snow shoveled from walks and driveways is not such an artificial condition as to create any unreasonable danger to pedestrians. Riccitelli v. Sternfeld, 394 Ill.App. 63, 109 N.E.2d 921 (1952); Taggert v. Bouldin, 111 N.J.L. 464,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

Page 11

168 A. 570 (1933); Mahoney v. Perreault, 275 Mass. 251, 175 N.E. 467 (1931).

Furthermore defendant's knowledge of the conditions on the parking lot was not superior to that of the plaintiffs. Plaintiffs had made numerous visits to the shopping center in all types of weather. They and the defendant were aware that the temperature on the day of the accident had not dropped below freezing and that piles of snow remained along streets and sidewalks. The defendant knew the parking lot was damp in areas as a result of melting snow, and the plaintiffs observed areas of dampness in the general location in which the daughter-in-law's car was parked. It is universally known that if the temperature dropped to or fell below thirty-two degrees, the dampness would probably freeze on the surface of the open-air parking lot. Although Margaret Cain testified she did not see any ice before she slipped, the ambulance driver, who arrived shortly after the accident, testified that the ice was visible to him from a standing position. In view of all the evidence it cannot be said that there existed any latent or concealed peril.

There is no liability on the part of an inviter to protect a *607 customer from hazards which are known to the customer and are so apparent that he may reasonably be expected to discover them and be able to protect himself. Generally, the liability of an owner or occupant of the premises is predicated on proof of his superior knowledge, actual or constructive, of danger to which the invitee is subjected and of which the invitee is unaware. Lexington Market Authority v. Zappala; Evans v. Hot Shoppes, Inc.; Morrison v. Suburban Trust Co., all supra.

As stated by Judge Hammond (now C.J.) in Glaze v. Benson, 205 Md. 26, 32, 106 A.2d 124, 127, in reviewing Restatement, Torts, Sec. 343, and the decision in Yaniger v. Calvert Bldg. & Con. Co., supra:
"* * * it is to be noted that the comparative knowledge of the parties is the test of liability,-that is to say, the knowledge of the defendant as opposed to the knowledge of the person injured.' Two conditions must concur, if the possessor of the land is to be held liable: (1) a realization that the condition constitutes an unreasonable risk to the patron; and (2) the absence of reason to believe that the condition will be discovered by the patron or the risk realized by him.'

The evidence showed that there had been no complaints about icy conditions on the parking lot. This is not conclusive, Thompson v. District of Columbia, D.C.Mun.Ct. of App., 182 A.2d 360 (1960), but in light of the facts that dampness on the surface of a parking lot is not an unreasonable condition of an outdoor parking lot during the winter and that in this case the ice formed in such a short time, it can be said as a matter of law that the defendant created and maintained no unreasonable risk to the plaintiff. Brent v. Bank of Aurora, 132 Colo. 577, 219 P.2d 391 (1955). See Langley Park Apts. v. Lund, Adm'r, supra; Maryland State Fair v. Henderson, 164 Md. 587, 165 A. 698. Margaret Cain had opportunity shortly before slipping and falling on the ice to know as much or more than the owner about the icy conditions in the parking lot. There is no room for disagreement**443 among reasonable men that the dangers present under the facts considered in the light most favorable to the plaintiff*608 were universally known and equally apparent to both that plaintiff and the defendant, and, accordingly, there should be no liability imposed upon the defendant. Crenshaw v. Firestone Tire & Rubber Co., 72 N.M. 84, 380 P.2d 828 (1963); Watts v. Holmes, 386 P.2d 718 (Sp.Ct.Wyo.1963).

I am of the opinion that there was no legally sufficient evidence to show that the defendant breached any duty owed by it to the plaintiffs and that the defendant's motion for a directed verdict at the close of all of the evidence on the ground of the lack of primary negligence should have been granted. It follows that the questions of contributory negligence and of assumption of risk need not be considered. I would reverse the judgment without a new trial.

I am authorized to state that Judges HORNEY and McWILLIAMS concur in the views herein expressed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

224 A.2d 433 Page 12

244 Md. 590, 224 A.2d 433
**(Cite as: 244 Md. 590, 224 A.2d 433)**

Md. 1966.
Honolulu Limited v. Cain
244 Md. 590, 224 A.2d 433

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.